Samuel C. Coleman, J.
This is a controversy between owner (Forest Park) and contractor (Markel).
Following a commitment by the Federal Housing Administration to insure a mortgage under section 213 of the National Housing Act (TJ. S. Code, tit. 12, § 1715e), a banking institution entered into a building loan agreement with Forest Park as owner and Forest Park entered into a construction contract with Markel. Construction work was done and Markel was paid. It asserts, in effect, that it received less than it *126 should have received and it asks for reimbursement. Its claim is twofold. It asks for the payment to it by the bank of the sum of $10,891.72, received by the bank by way of refund from the FHA and payment from the owner directly of an additional sum of $4,889.87. I believe it is entitled to both amounts.
A clause in the contract between owner and contractor dealt with ‘ ‘ carrying charges ’ ’ during the period of construction. Those charges were estimated to be $117,351 and they were, of course, the obligation of the owner. They included, among other items, interest, real estate taxes, title and recording expenses, and FHA mortgage insurance premiums. The contract provided that if the carrying charges during the period of construction should turn out to be less than the estimated amount, “ and there is paid to the mortgagor the unused portion thereof upon completion of construction and issuance of the Final Advance, that such unused portion so paid over to the mortgagor shall be paid to the contractor hereunder as an additional compensation. * * * The contractor further agrees that in case the aforesaid carrying charges during construction shall exceed the sum of $117,351.00, the contractor shall pay the amount of such excess without additional charge or cost to the owner or any rights to reimbursement thereto.”
The purpose of the clause is plain: it was to encourage diligence on the part of the contractor and to shorten the period of construction. If that period were shortened and the carrying charges proved to be less than those estimated, the contractor would receive the difference as an incentive bonus; if they were greater, the excess was to be deducted from the contract price, as a deduction for delay. The carrying charges actually paid amounted to $154,284.94 (including $32,742.99 for FHA mortgage insurance premiums); and final payment to the contractor was made on that basis with a credit in favor of the contractor in the amount of $9,282.59 which was a portion of the FHA mortgage insurance attributed, at the time, to the period after construction. So the contractor, in effect, realized $27,651.35 less than the contract price, this being the excess over the estimated carrying charges of $117,351 for which Market was held responsible. Now, as was indicated above, included in the total carrying charges of $154,284.94 were payments to the FHA for mortgage insurance premiums aggregating $32,742.99, covering the period from May 12, 1953, when the insurance became effective, to April 1,1956, the anniversary date of the insurance. These payments were as follows: May 12, 1953, $13,235; April 22, 1954, $13,235; October 25, 1954, $6,272.99. All three payments were based on the estimated *127 premium for a forthcoming period and they far exceeded the earned premiums as later determined. Premiums were earned when and as advances were made on account of the mortgage loan in the course of construction and they could only be fixed after the final advance had been made. The period of construction was from May 12, 1953 to February 18, 1955 and thereafter the FHA reviewed the mortgage account. In August, 1955 it determined that the total amount of premiums actually due as of April 1, 1955 (which included the period up to APTÜ 1, 1956) was $21,851.27 in place of the $32,742.99 already paid. The balance, $10,891.72, was refunded to the bank, the mortgagee, “for the account of the mortgagor.” And it is this balance which is one of the two matters in dispute. Owner and contractor claimed it, the bank brought an action of interpleader, and the controversy is between the owner and the contractor.
The claim for the additional sum in controversy arises as follows: Construction was finished February 18, 1955 and there could be no “ carrying charge during construction ’ ’ after that date. Yet the second and third payments to the FHA (a total of $19,509.99) were made as the estimated premiums for the period of May 12,1954 to April 1,1956. All that could properly be considered among “ carrying charges ” for this period was the earned premium until completion of construction, that is from May 12, 1954 to February 18,1955, computed on the basis of FHA computations at $6,990.33. The actual earned premium for the first period (May 12,1953 to May 12,1954) was $688.48, and this figure added to the earned premium up to the completion of construction brought the total earned premiums to $7,678.81. Only that amount, as mortgage insurance premiums, could be added to the other carrying charges to determine the extent to which total carrying charges exceeded the amount estimated in the contract, to wit, $117,351. This excess, under the terms of the contract, had to be borne by Markel. I have already said that the adjustment of the FHA mortgage insurance premiums made by the parties prior to the final audit by the FHA resulted in a total premium of $23,460.40 being-assigned to the construction period. It should have been only $7,678.81, and the contractor is entitled to the difference, $15,781.59.
In effect, what the owner did was to make the contractor assume the burden of additional costs, part of which had never been incurred, with the other part attributable to the period after construction. When the refund check was received it represented funds which should not have been taken in the first instance from the contractor, by way of penalty deduction from *128 the construction contract price. And similarly with the additional amount involved in the counterclaim. That amount should not and would not have been deducted if at the time of adjustment of figures between owner and contractor the exact figures as to earned mortgage insurance premiums had been available. That adjustment was in February, 1955, and the final computation showing total amount of premium due was not made by the FHA until August, 1955. The owner does not plead thát there was an “ account stated ” in February, 1955 as to either of the two items, and in the circumstances there could not be any such final accounting. Only in August did the parties learn what was the true state of the insurance premium account. The amount remitted, as I have already indicated, is smaller than the contractor is entitled to because the earned premium was computed for a period extending beyond the completion of construction. But the two items of claim go together. The contractor took a reduction in the contract price not warranted by the facts and it should be made whole.
The owner’s reliance therefore on the clause in the contract with reference to reimbursement is misplaced; that clause is inapplicable. The contractor is not seeking reimbursement for carrying charges during construction which exceeded the estimated amount but is asking for the return of carrying charges charged against him which were either never actually charged or are not attributable to the construction period at all. There will be judgment for Markel, declaring it to be entitled to the proceeds of the refund check, $10,891.72; and judgment in Markel’s favor against Forest Park on its counterclaim for $4,889.87.
I reject the argument of Markel that in computing “ carrying charges during construction ” only the earned premium for the first year is to be considered, not “ during construction.” Even though “insurance premium” is used in the singular while other items of carrying charges are referred to in the plural, it is plain enough that “ carrying charges ” comprehend all charges of the kind specified in clause 14 and incurred during construction. The rules and regulations of the FHA are in accord with this conclusion. Section I, paragraph 6, speaks of “ advances of mortgage money during construction and the insurance of such advances as made ”; section IV, paragraph 4(C) deals with the control, by FHA, “ of funds during..construction ” — i.e., funds resulting from advances made by the mortgagee during construction — and (in subd. 1) requires an allocation by the mortgagee ‘ ‘ to the accruals for taxes, mortgage insurance premiums [in the plural], hazard insurance *129 premiums in subdivision 4 reference is made to the “ manner and conditions under which advances (if any) during construction are to be made by the mortgagee and approved for insurance by the [F.H.A.]